## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSICA MICHELLE BOOZER,** *as the Personal Representative of the Estate of Jeffrey T. Hoernemann, deceased*, **CHELSEA LEE SPENDLOVE,** *as the Personal Representative of the Estate of Eric V. Spendlove, deceased*, **ANNE VERVALEN-GROSHONG,** *as the Personal Representative of the Estate of Jacob Michael Galliher, deceased*, **BROOKE UNRATH,** *as the Personal Representative of the Estate of Luke A. Unrath, deceased*, **HOWARD BRAYMAN,** *as the Personal Representative of the Estate of Terrell K. Brayman, deceased*, **GABRIELA LAVOY,** *as the Personal Representative of the Estate of Zachary Lavoy, deceased*, **RUYEILLISS NIEVES,** *as the Personal Representative of the Estate of Jake M. Turnage, deceased*, **TINA NUTTER,** *as the Personal Representative of the Estate of Brian Johnson, deceased* | : : : : : : : : : : : : : : : : : : : : : : | **CIVIL ACTION** |
| **v.** | : : | **NO.  25-4522** |
| **BELL TEXTRON, INC., THE BOEING COMPANY, UNIVERSAL STAINLESS & ALLOY PRODUCTS, INC.** | : : : : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                                   **April 7, 2026**

In November 2023, a V-22 Osprey aircraft operated by the United States Airforce

crashed into the East China Sea off the coast of Japan while on a military training exercise.

Tragically, the eight U.S. service members aboard the aircraft died.  Plaintiffs, the

representatives of the decedents' estates, have brought state law claims against the three

companies that manufactured the aircraft:  Bell Textron, Inc. (Bell), the Boeing Company

(Boeing), and Universal Stainless & Alloy Productions, Inc. (Universal).  The merits of their

allegations are not yet before us.  Rather, we must first decide whether the plaintiffs are free to

rely on state law.  Over a century ago, Congress passed the Death on the High Seas Act (DOHSA), which provided a wrongful death remedy for survivors of persons killed on the high seas.  Although the Act helped families by providing a cause of action, it also restricted remedies by authorizing only certain surviving relatives to recover damages and by limiting damages to those relatives' pecuniary losses.  Here, rather than proceed under DOHSA, the plaintiffs have chosen instead to pursue their claims under the more friendly purview of Pennsylvania state law.  The defendants challenge this approach in a motion to dismiss, arguing that the plaintiffs' state law claims are preempted by DOHSA.  Although plaintiffs make the best of their arguments, the available authorities strongly endorse defendants' view.  We dismiss the plaintiffs' complaint without prejudice.

## I.      FACTUAL BACKGROUND

The plaintiffs in this case brought state-law claims against Bell, Boeing, and Universal for defectively manufacturing the V-22 Osprey.  *See* DI 13 at ¶¶ 141-222[1].  Plaintiffs assert claims under Pennsylvania state law for strict product liability; negligence and/or gross negligence/recklessness; breach of the implied warranty of merchantability; fraudulent misrepresentation; negligent misrepresentation; breach of contract; civil conspiracy; and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL). *Id.*  Plaintiffs seek "economic and non-economic damages allowed under the Pennsylvania Survival Act and the binding precedential holding of *Dugas v. Nat'l Aircraft Corp.*, 438 F.2d 1386 (3d Cir. 1971)."  *Id.*  Plaintiffs also seek punitive damages on certain claims and demand a jury trial.  *Id.*

---

[1] We adopt the sequential pagination supplied by the CM/ECF docketing system.

On October 2, 2025, defendants filed a joint motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  They argue that plaintiffs' claims are preempted by the Death on the High Seas Act (DOHSA), 46 U.S.C. § 30301 *et seq.*, which in their view provides the exclusive remedy for high-seas aviation fatalities.  Furthermore, they claim that under DOHSA, plaintiffs are not entitled to a jury trial.  DI 29-1 at 9-10.  In opposition, plaintiffs argue that: (1) the plain language of DOHSA does not compel preemption and (2) DOHSA does not apply to their land-based negligence claims.  Plaintiffs further assert that even if DOHSA does apply to the facts of this case, they still have the right to a jury trial.  DI 38 at 5-8.

## II.    STANDARD OF REVIEW

When ruling on a Rule 12(b)(6) motion to dismiss, we must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  "[W]e accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 459, 462 (3d Cir. 2021).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In regard to this motion, "[a] contention that a state law claim is preempted by federal law is properly attacked under the Rule 12(b)(6) standard." *Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 497 (E.D. Pa. 2014); *see also Hamer v. Navient Corp.*, No. 18-cv-205, 2019 WL 3936655, at *3 (D. Del. Aug. 20, 2019).  District courts have considered the issue of DOHSA preemption at the motion to dismiss stage. *See e.g. In re Lion Air Flight IT 610 Crash*, No. 18-cv-07686, 2023 WL 3653218, at *3 (N.D. Ill. May 25, 2023); *Kennedy v. Carnival*

3

*Corp.,* 385 F. Supp. 3d 1302, 1313 (S.D. Fla. 2019).

## III.    DISCUSSION

The parties' dispute centers on two issues.  First, in situations where DOHSA applies, does it preempt state remedies?  Second, does DOHSA apply to the facts of this case?  Because we answer yes to both questions, we grant the defendants' motion to dismiss.

### A.  When DOHSA applies, it preempts state remedies

Congress passed DOHSA in 1920 to "create[] a remedy in admiralty for wrongful deaths more than three miles from shore."  *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 620 (1978).  Over three decades prior to DOHSA's enactment, the U.S. Supreme Court ruled in *The Harrisburg*, 119 U.S. 199, 213-14 (1886) that "the general maritime law (a species of judge-made federal common law) did not afford a cause of action for wrongful death."  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996).  Therefore, "suits arising out of maritime fatalities were founded by necessity on state wrongful-death statutes."  *Mobil Oil Corp.*, 436 U.S. at 620.  This arrangement was problematic because many states did not provide a wrongful death remedy that extended to the high seas, and state wrongful death statutes that did reach the high seas were often ineffective.  This was because "legislative jurisdiction to impose a liability for a wrongful act at sea beyond the boundaries of the state had to rest upon one of two theories: either (1) that the vessel upon which the wrongful act occurred was constructively part of the territory of the state; or (2) that the wrongdoer was a vessel or citizen of the state subject to its jurisdiction even when beyond its territorial limits.  Neither theory sufficed for every situation." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 214 (1986) (citation modified); *see also Wilson v. Transocean Airlines*, 121 F. Supp. 85, 88 (N.D. Cal. 1954); Robert M. Hughes, *Death Actions in Admiralty*, 31 Yale L.J. 115, 117 (1921).

4

DOHSA's passage injected a more certain remedy for wrongful deaths on the high seas. The cause of action reads:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302.  Importantly, DOHSA limits recovery to "a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought."  § 30303. For commercial aviation accidents only, a DOHSA amendment passed in 2000 provides that beneficiaries may also recover "nonpecuniary damages" "for loss of care, comfort, and companionship."  § 30307.  However, punitive damages are expressly precluded.  *Id.*  Other provisions of DOHSA bar contributory negligence as a complete defense (§ 30304), establish a limited survival provision (§ 30305), govern actions under foreign law (§ 30306)**,** and preserve state-court jurisdiction (§ 30308).  *See Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 122 (1998).

For the half century after DOHSA's passage, the statute "brought a measure of uniformity and predictability to the law on the high seas" with deaths on the high seas generally giving rise to federal suits under DOHSA while those on territorial waters were largely governed by state wrongful-death statutes. *Mobil Oil Corp.*, 436 U.S. at 621.  However, in 1970, the Supreme Court overruled *The Harrisburg* and held that a federal remedy for wrongful death exists under general maritime law.  *See Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 409 (1970).  And then in *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 584-91 (1974), the Court defined this remedy broadly, holding that an award for wrongful death under general maritime law includes not just pecuniary damages (as allowed under DOHSA) but also loss of society

damages which "embrace[] a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." *Id.* at 585.

The Court's holdings in *Moragne* and *Gaudet* encouraged plaintiffs to supplement their recovery for wrongful death claims under DOHSA with more fulsome awards under general maritime law.  Plaintiffs also tried this strategy with state statutes, which, while limited jurisdictionally as described above, often permitted plaintiffs to recover the same awards as under general maritime law for both pecuniary and loss of society damages.  *See Gaudet*, 414 U.S. at 587.[2]  In 1971, our Circuit held that plaintiffs could supplement their recovery under DOHSA with an award under the Pennsylvania Survival Act, reasoning that because DOHSA is "framed as a wrongful death statute" the Act does not preempt the "separate and distinct remedy encompassed in state survival statutes." *Dugas v. Nat'l Aircraft Corp.*, 438 F.2d 1386, 1388-92 (3d Cir. 1971).

More recently, the pendulum swung back a bit because the Supreme Court has all but foreclosed plaintiffs from supplementing their recovery under DOHSA with any other applicable law.  First, in *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978), the Court held that when DOHSA applies, plaintiffs may not supplement their award with loss of society damages under general maritime law.  The Court recognized that "because Congress has never enacted a

---

[2] State statutes came in two forms: wrongful death statutes and survival statutes.  *Gaudet*, 414 U.S. at 575 n.2.  Wrongful death statutes "give[] surviving relatives a cause of action for losses *they* suffered as a result of the decedent's death" while a survival statute "permits a decedent's estate to recover damages that the decedent would have been able to recover but for his death." *In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007, 1012 (7th Cir. 2024) (citation modified).

comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes." *Id.* at 625.  However, DOHSA was different because it reflected "Congress' considered judgment" on the scope of remedies for wrongful deaths on the high seas.  *Id.*  More specifically, the Court reasoned that "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements" and thus plaintiffs could not recover non-pecuniary damages for loss of society "[i]n the area covered by the statute." *Id.*; *see also Jacobs v. N. King Shipping Co.*, 180 F.3d 713, 718 (5th Cir. 1999).

Eight years later in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232 (1986), the Court rejected another vehicle for supplementing recovery under DOHSA: state wrongful death statutes.  Respondents in *Offshore Logistics* argued that § 30308(a) of DOHSA preserves the applicability of state wrongful death statutes to deaths on the high seas.[3]  *Id.* at 220.  But the Court disagreed.  The Court evaluated § 30308(a) "in light of the language of the Act as a whole, the legislative history of § [8], the congressional purposes underlying the Act, and the importance of uniformity of admiralty law," *id.* at 221, and determined that § 30308(a) operates only as a "jurisdictional saving clause, and not as a guarantee of the applicability of state substantive law to wrongful deaths on the high seas."[4]  *Id.* at 232.  With this conclusion in mind, the Court then reasoned, as it had in *Mobil Oil Corp.*, that "Congress has struck the balance for

---

[3] § 30308(a) reads: "This chapter does not affect the law of a State regulating the right to recover for death."

[4] By jurisdictional saving clause, the Court meant that § 30308(a) protects the ability of states to craft their own wrongful death remedies for deaths in territorial waters and to hear claims under DOHSA for deaths on the high seas.  But states could not craft their own independent remedies for deaths on the high seas.  *Offshore Logistics*, 477 U.S. at 221.

us in determining that survivors should be restricted to the recovery of their pecuniary losses, and when DOHSA does speak directly to a question, the courts are not free to supplement Congress' answer so thoroughly that the Act becomes meaningless." *Id.* (citation modified). Thus, "state [wrongful death] statutes are pre-empted by DOHSA where it applies." *Id.* The Court, however, left open the question of whether DOHSA preempts recovery under state survival statutes. *Id.* at 215 n.1.

The Supreme Court has never explicitly determined whether state survival statutes are preempted by DOHSA, but it decided a very similar issue in *Dooley v. Korean Air Lines Co.*, 524 U.S. 116 (1998). There, the Supreme Court held that when DOHSA applies, a decedent's relatives cannot recover for the decedent's pre-death pain and suffering through a survival action under general maritime law. The petitioners in *Dooley* argued that "because DOHSA is a wrongful-death statute . . . it has no bearing on the availability of a survival action." *Id.* at 123. But the Supreme Court disagreed, pointing to DOHSA's survival provision — § 30305 — as evidence that Congress had considered "the availability and contours of a survival action in cases of death on the high seas" and chose to limit recovery in such cases to the pecuniary losses suffered by surviving relatives.[5] *Id.* at 124. Therefore, the Court held that "[b]ecause Congress has chosen not to authorize a survival action for a decedent's pre-death pain and suffering, there

---

[5] § 30305 specifically says that "[i]f a civil action in admiralty is pending in a court of the United States to recover for personal injury caused by wrongful act, neglect, or default described in section 30302 of this title, and the individual dies during the action as a result of the wrongful act, neglect, or default, the personal representative of the decedent may be substituted as the plaintiff and the action may proceed under this chapter *for the recovery authorized by this chapter*." (emphasis added). Thus, recovery is limited to the pecuniary losses suffered by surviving relatives.

can be no general maritime survival action for such damages." *Id.*

After *Dooley*, we see no pathway for state survival statutes to escape DOHSA preemption. The Court made clear in *Mobil Oil Corp.*, 436 U.S. at 625 that "when [DOHSA] does speak directly to a question, the courts are not free to supplement Congress' answer" (citation modified) and in *Dooley*, 524 U.S. at 124 the Court declared that "Congress has spoken on the availability of a survival action." Therefore, plaintiffs cannot look to state survival statutes as an alternative means of recovery for deaths on the high seas.[6] *See Jacobs*, 180 F.3d at 720 ("Although the Court in [*Offshore Logistics*] left open the question of whether a plaintiff could look to state survival statutes to supplement a DOHSA wrongful death remedy, *Dooley* effectively closed this gap."); *In re Lion Air Flight JT 610 Crash*, 110 F.4th at 1013 ("The plaintiffs' non-DOHSA claims grounded in state law [] cannot go forward."); *Bowoto v. Chevron Corp.,* 621 F.3d 1116, 1125 (9th Cir. 2010) (*Dooley* thus held that DOHSA preempts *all* survival claims for deaths on the high seas unless there is clear indication that Congress intended otherwise.").

The plaintiffs try to counter by turning our attention to the text of DOHSA itself. Specifically, they argue that DOHSA's use of the phrase "may bring a civil action" rather than "must" bring a civil action means that the statute does not compel preemption. *See* § 30302. They also emphasize that the language of § 30308(a) protects the applicability of state

---

[6] It appears to us that the Third Circuit's holding in *Dugas* does not survive *Dooley*. The Court's conclusion in *Dugas* that plaintiffs could recover under the Pennsylvania Survival Act rested in large part on its contention that "DOHSA is silent on the question" of survivorship. *Dugas*, 438 F.2d at 1389. But the Supreme Court rejected this exact contention in *Dooley*, reasoning that DOHSA *does* speak to the issue of survivorship in § 30305. *Dooley*, 524 U.S. at 124. Plaintiffs seem to have largely conceded this point in their proposed second amended complaint, as they have removed references to *Dugas*. *See* DI 40-3.

substantive law to deaths on the high seas. If we were writing on a blank slate, we might find plaintiffs' arguments persuasive, or at least a good place to start. But we cannot ignore the binding precedent from *Mobil Oil Corp., Offshore Logistics,* and *Dooley*, which together compel preemption and make clear that § 30308(a) is only a jurisdictional saving clause. In summary, in situations where DOHSA applies, plaintiffs cannot bring their claims under the Pennsylvania Survival Act or any other potentially applicable state wrongful death or survival statute.

### B. DOHSA applies to the facts alleged in this case

That brings us to the question of whether DOHSA controls here. As mentioned above, DOHSA applies when: (1) the death of an individual is caused by wrongful act, neglect, or default; (2) occurring on the high seas; (3) beyond 3 nautical miles from the shore of the United States. § 30302. The parties agree that the decedents died in the Pacific Ocean well beyond three nautical miles from the shore of the United States. And while the crash occurred in Japanese coastal waters, "courts have consistently interpreted DOHSA as applying to nautical accidents that occur within such foreign territorial waters." *In re Air Crash Disaster Near Peggy's Cove, N.S. on Sept. 2, 1998*, 210 F. Supp. 2d 570, 580-582 (E.D. Pa. 2002); *see also Jennings v. Boeing Co.*, 660 F. Supp. 796, 803 (E.D. Pa. 1987); *Howard v. Crystal Cruises, Inc.*, 41 F.3d 527, 529-31 (9th Cir. 1994).

Thus, the plaintiffs challenge DOHSA's applicability only on one ground: that the defendants' "wrongful act, neglect, or default" did not "occur" on the high seas. Rather, plaintiffs contend that the defendants' wrongful acts occurred on land, where the defendants manufactured the allegedly defective aircraft. As other courts have observed, the text of § 30302 seemingly lends itself to plaintiffs' interpretation. *See Motts v. M/V GREEN WAVE*, 210 F.3d 565, 569 (5th Cir. 2000) ("At first glance, the plain text of this statutory provision seems to

indicate that DOHSA is implicated only when the wrongful act precipitating death occurs on the high seas."). However, a closer analysis of DOHSA's text combined with a thorough consideration of the statute's purpose and subsequent judicial interpretation persuades us that the "wrongful act, neglect, or default" here did indeed occur on the high seas, and thus DOHSA applies.

### a. The ordinary meaning of the text establishes that DOHSA applies to the plaintiffs' claims

"As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (citation modified). DOHSA does not define the words "wrongful," "act," "neglect," and "default," nor are those words maritime terms of art,[7] and thus we look to dictionaries as a guide.

---

[7] While DOHSA is a maritime statute, the phrase "wrongful act, neglect, or default" is not a maritime term of art, but rather is borrowed from the Fatal Accidents Act of 1846 (known colloquially as Lord Campbell's Act), the first wrongful death statute passed in the United Kingdom. *See Solomon v. Warren*, 540 F.2d 777, 788 n.12 (5th Cir. 1976) ("[T]he F.E.L.A. and DOHSA are both Lord Campbell's Act type of statutes."). The Act provided as follows:

1. [W]hensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

2. [E]very such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst

11

*See Sandifer v. U.S. Steel Corp.,* 571 U.S. 220, 227-28 (2014).  Dictionaries from the time define "wrong" as "an injury: a tort; a violation of right or of law" and "act" as "something done voluntarily by a person."  *See Wrong*, Black's Law Dictionary (2nd ed. 1910); *Act*, Black's Law Dictionary (2nd ed. 1910).  So, an approximate meaning of "wrongful act" is a tort that is done voluntarily by a person.  Continuing, "neglect" is defined as "[o]mission; failure to do something that one is bound to do; carelessness" and "default" is defined as "[t]he omission or failure to fulfill a duty, observe a promise, discharge an obligation, or perform an agreement."  *See Neglect*, Black's Law Dictionary (2nd ed. 1910); *Default*, Black's Law Dictionary (2nd ed. 1910).

In sum, the phrase "wrongful act, neglect, or default" embraces a range of tortious conduct.  This is consistent with the canon against surplusage, as "it is our duty to give effect, if possible, to every clause and word of a statute."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation modified); *see also Skovgaard v. The Tungus*, 252 F.2d 14, 17 (3d Cir. 1957) ("The legislature describes [the conduct] as 'wrongful act, neglect or default.' It is presumed that the legislature did not employ useless verbiage and that each word has independent meaning.").  Likewise, the Supreme Court and inferior courts have interpreted DOHSA to sweep in tortious

---

the afore-mentioned parties in such shares as the jury by their verdict shall find and direct.

Lord Campbell's Act (Fatal Accident Act), 1846, 9 & 10 Vict., ch. 93.  Therefore, we do not believe, nor have the parties represented, that "wrongful act, neglect, or default" had an established meaning under general maritime law at the time of DOHSA's passage.  After all, the phrase is not like the word "seaman," which has been interpreted by federal courts in the admiralty context since the nation's founding.  *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337 (1991).

12

conduct that goes beyond simple negligence. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 25 (1990) ("DOHSA filled this void, creating a wrongful death action for all persons killed on the high seas, sounding in both negligence and unseaworthiness.")[8]; *Fosen v. United Techs. Corp.*, 484 F. Supp. 490, 496 (S.D.N.Y. 1980) ("The Death on the High Seas Act does provide for claims based on negligence, breach of implied warranty of fitness, and products liability.") (citation modified); *Wilson*, 121 F. Supp. at 92 ("It is clear that the scope of the Death on the High Seas Act, within the geographical area of its operation, was intended to be as broad as the traditional tort jurisdiction of admiralty.").

Because "wrongful act, neglect, or default" is broadly synonymous with tortious conduct, we next consider where tortious conduct "occurs" under the Act. DOHSA does not define the term "occurring," but its ordinary meaning at the time DOHSA passed was: "To meet one's eye; present itself; appear; to take place; happen." *Occur*, Webster's New Int'l Dictionary of the English Language (1919). Looking to the statutory context, these definitions — focusing on when the tortious conduct presents itself or becomes apparent — make sense: DOHSA provides a "civil action *in admiralty*," § 30302 (emphasis added), and so the tortious conduct must be cognizable under admiralty law. "For purposes of admiralty jurisdiction, controlling case law holds that the tort occurs where the negligence takes effect, not where the negligent act occurred." *Butler v. Am. Trawler Co.*, 887 F.2d 20, 21 (1st Cir. 1989) (citation modified); *see also Edynak v. Atl. Shipping Inc. Cie. Chambon Maclovia S.A.*, 562 F.2d 215, 221 n.8 (3d Cir. 1977) ("Under the locality test, the tort occurs where the alleged negligence takes effect.");

---

[8] Unseaworthiness differs from negligence in that it is a strict liability claim. *See Miles*, 498 U.S. at 25.

*Wilson*, 121 F. Supp. at 92 ("In applying the 'locality' test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action.").

Here, plaintiffs allege that defendants' torts — their faulty manufacturing of the aircraft — *took effect* during the decedents' over-water flight from Iwakuni, Japan to Okinawa, Japan, beginning with the first PRGB chip-burn advisory on the Osprey's left engine and culminating in the Osprey's crash into the water. *See* DI 13 at ¶¶ 109-140. And because the torts took effect on the high seas, the "wrongful act, neglect, or default occur[ed] on the high seas" and therefore DOHSA applies. Although we agree with other courts that the text of the statute admits this conclusion, a fuller context lends further support.

**b. DOHSA's applicability is confirmed by other sections of the statute, its subsequent judicial interpretation, and by its Congressional purpose**

Other sections of DOHSA confirm that the statute applies to deaths on the high seas regardless of whether the precipitating wrongful conduct occurred on land. First, DOHSA is titled the "Death on the High Seas Act" (§ 30301), which expressly connects the location of the fatal accident to the right to recovery for death on the high seas. In fact, the full title of the statute when passed was "An Act Relating to the *maintenance of actions for death on the high seas* and other navigable waters." 41 Stat. 537 § 1 (emphasis added); *see also I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.,* 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

Congress again focused on the location of the decedent's accident in defining the scope of DOHSA's commercial aviation amendment from 2000. The relevant text reads:

> **(b) Beyond 12 nautical miles.**--In an action under this chapter, if the death resulted from a commercial aviation accident *occurring on the high seas* beyond

12 nautical miles from the shore of the United States, additional compensation is recoverable for nonpecuniary damages, but punitive damages are not recoverable.

**(c) Within 12 nautical miles.**--This chapter does not apply if the death resulted from a commercial aviation accident *occurring on the high seas* 12 nautical miles or less from the shore of the United States.

§ 30307 (emphasis added).  We are aware of no indication that Congress intended to create a conflict between the scope of the new provision and the preexisting ones, and therefore understand the amendment to confirm our conclusion that the statute applies to deaths on the high seas regardless of where any precipitating wrongful conduct occurred.  *See Hall v. United States*, 566 U.S. 506, 519 (2012) ("Absent any indication that Congress intended a conflict between two closely related chapters, we decline to create one.").

Against this backdrop, courts have uniformly applied DOHSA to fatal accidents that occurred on the high seas, regardless of what happened on land.  First, while the Supreme Court has not directly ruled that DOHSA extends to situations where a defendant's torts are land-based, the Court has applied DOHSA to land-based fact patterns.  For example, as the defendants correctly point out, in *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977), *rev'd*, 436 U.S. 618 (1978), the plaintiffs alleged that a high seas helicopter crash had been caused by, among other things, "slipshod inspection practices," which must have occurred on land.  *Id*. at 431.  But the location of the alleged negligence did not play any role in the Supreme Court's decision, which held that DOHSA applied simply because the decedents had died on the high seas.  *See* 436 U.S. at 618-19.  Likewise in *Offshore Logistics*, the plaintiffs sued both the owner and *manufacturer* of a helicopter that crashed on the high seas.  *See Tallentire v. Offshore Logistics, Inc.*, 754 F.2d 1274, 1276 (5th Cir. 1985), *rev'd*, 477 U.S. 207 (1986).  Again, the Supreme Court said nothing about where the alleged wrongful acts had their inception; DOHSA

15

applied simply because the fatal accident had occurred on the high seas. *See* 477 U.S. at 220 ("Because the fatalities underlying this suit . . . occurred on the high seas, DOHSA plainly was intended to control.").

Furthermore, in recognizing the doctrine of unseaworthiness as a proper claim under DOHSA, *see Miles*, 498 U.S. at 25, the Supreme Court has implicitly confirmed that DOHSA extends to land-based tort claims. The doctrine of unseaworthiness imposes a nondelegable duty on a shipowner "to furnish a vessel and appurtenances reasonably fit for their intended use." *Yamaha Motor Corp.,* 516 U.S. at 208 (citation modified). The duty is absolute: "failure to supply a safe ship result[s] in liability irrespective of fault and irrespective of the intervening negligence of crew members." *Id.* Thus, in other words, unseaworthiness is the ultimate land-based tort claim. The shipowner must manufacture a vessel "reasonably suited for her intended service," *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550 (1960) and can be held liable regardless of whether there is intervening negligence at sea. Therefore, unseaworthiness claims under DOHSA directly contradict plaintiffs' reading of the statute.

Circuit courts agree. The Fifth, Ninth, and Eleventh Circuits have all held that DOHSA applies where the decedent is injured on the high seas, even if the defendant's negligence was land-based. *See Motts*, 210 F.3d at 567 ("[T]he statute's application is not limited to negligent acts that actually occur on the high seas. The Supreme Court has repeatedly noted that when the death itself occurs on the high seas, DOHSA applies."); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1348 (9th Cir. 1987) ("[DOHSA] has been held to refer to the site of an accident on the high seas, not to where death actually occurs or where the wrongful act causing the accident may have originated."); *LaCourse v. PAE Worldwide Inc*., 980 F.3d 1350, 1356 (11th Cir. 2020)

16

("DOHSA has been construed to confer admiralty jurisdiction over claims arising out of airplane crashes on the high seas though the negligence alleged to have caused the crash occurred on land.") (citation modified).

District Courts uniformly agree on this issue as well. *See e.g. In re Lion Air Flight JT 610 Crash*, 2023 WL 3653218, at *4 (N.D. Ill. May 25, 2023) ("[The plaintiffs'] argument that Defendants' negligence occurred on land also fails."); *Dome v. Celebrity Cruises Inc.*, 595 F. Supp. 3d 1212, 1221 (S.D. Fla. 2022) ("[A] cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission was consummated in an actual injury, not at the point [where] previous or subsequent negligence allegedly occurred."); *Santos v. Am. Cruise Ferries, Inc.,* 100 F. Supp. 3d 96, 103 (D.P.R. 2015) ("The statute covers any fatal, high seas injury, even if the negligence was entirely land-based and the ensuing death took place on shore at a later time."); *Sonenberg v. Princess Cruise Lines, Ltd.*, 2015 WL 13915634, at *6 (C.D. Cal. Apr. 22, 2015) ("[W]hat is relevant [for DOHSA] is where the accident occurred, not where the tortious conduct took place.") (citation modified); *Kopperi v. Sikorsky Aircraft Corp.*, No. 3:08CV451 WWE, 2009 WL 6919972, at *15 (D. Conn. Sept. 2, 2009) ("DOHSA applies where the decedent is injured on the high seas, even if a party's negligence is entirely land-based . . . .") (citation modified); *Lacey v. L. W. Wiggins Airways, Inc.*, 95 F. Supp. 916, 918 (D. Mass. 1951) ("The court concludes that when the statute speaks of 'wrongful act, neglect, or default occurring on the high seas', it contemplates the substance of the occurrence which resulted in death and gave rise to a right to recover.").

In contrast to this broad consensus, plaintiffs do not cite — nor can we find — a decision holding that DOHSA does not extend to a death on the high seas when the precipitating tortious

conduct occurred on land.  This matters "because of the maxim that, if Congress leaves in place a unanimous or near-unanimous judicial interpretation for a sufficiently long period of time, it can be deemed to have acquiesced in or ratified that judicial interpretation."  *In re Lion Air Flight JT 610 Crash*, 110 F.4th at 1016; *see also Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 537 (2015) ("If a word or phrase has been given a uniform interpretation by inferior courts, a later version of that act perpetuating the wording is presumed to carry forward that interpretation.") (citation modified); *In re Air Crash Disaster Near Peggy's Cove,* 210 F. Supp. at 575 ("[W]hen Congress amends an existing statute, a court must presume that any part of the statute left intact reflects Congress' intent to preserve the prevailing judicial interpretation of that portion.").  Here, Congress has not made any material changes to § 30302 in the century since DOHSA's passage, including when Congress amended the statute in 2000.  This tends to show that Congress has adopted the judiciary's prevailing interpretation that DOHSA applies to all fatal accidents on the high seas.

Finally, the plaintiffs' preferred interpretation of DOHSA would undermine Congress's purpose in passing this legislation.  As we stated earlier, Congress passed DOHSA to provide a more effective remedy for deaths on the high seas than existed at the state level.  *See Offshore Logistics*, 477 U.S. at 213-14 ("The possibility of recovery under state law for deaths on the high seas did little to fill the vacuum . . . It was in this atmosphere that Congress considered legislation designed to provide a uniform and effective wrongful death remedy for survivors of persons killed on the high seas.") (citation modified); *Wilson*, 121 F. Supp. at 90 ("The Death on the High Seas Act was prompted, in large part, by the desire to put an end to the uncertainties

18

attending the application of state statutes to deaths on the high seas.").[9]  But if we adopt plaintiffs' preferred interpretation, this would largely return wrongful death actions on the high seas to the purview of the states, since prospective plaintiffs could almost always point to some tortious conduct that had its inception on land to escape DOHSA's reach.  Agreeing with plaintiffs here would not only run contrary to the text and unanimous consensus of the courts, but it would also undercut every explanation of the statute's purpose.  *See United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002) ("[W]e will not read a text to produce absurd results plainly inconsistent with the drafters' intentions.").  The evidence as a whole leaves no room to doubt that DOHSA applies to the plaintiffs' claims.

## IV.    CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is granted and plaintiffs' claims are dismissed without prejudice.  Plaintiffs have 21 days from the date of our accompanying order to replead their claims under DOHSA.[10]

---

[9] Congress's intent to take remedies for deaths on the high seas out of the hands of state legislatures is further revealed by DOHSA's legislative history:  Both the Senate and House Reports comprise quoted remarks by supporters of the proposed Act who emphasize the benefit of the federal government (rather than the states) providing a maritime remedy for wrongful deaths on the high seas. *See Moragne.,* 398 U.S. at 397.  For example, the Act's supporters emphasized that "Such state statutes, diverse in their terms and conflicting in remedies, are but a poor makeshift for the uniform, simple legislation which Congress alone can enact," that "[t]his is for the purpose of uniformity, as the States can not properly legislate for the high seas" and that "[t]here is no reason why the admiralty law of the United States should longer depend on the statute laws of the States and lag behind the general law of Europe."  H.R. Rep. No. 674, at 3-4 (1920).

[10] We decline at this stage to decide whether the plaintiffs have a right to a jury trial under DOHSA, or what approach we might take to trying DOHSA claims.